1 | Chuangchuang Chen(CA Bar #349114)
2 | 19209 Colima Rd, Ste E
   | Rowland Heihgts, CA 91748
3 | Telephone: (909)969-6666
4 | Fax Number:  (909)969-6666
   | Email: lawyerchchch@gmail.com
5 | Attorney For Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHUANGCHUANG CHEN;<br>XIPENG WANG;<br>DONGDONG ZHU;<br><br>Plaintiffs,<br><br>vs.<br><br>TOISHAN BENEVOLENT ASSOCIATION, INC.;<br><br>ZUOLIN MA;<br><br>ZHU;<br><br>CONSULATE GENERAL OF THE PEOPLE'S REPUBLIC OF CHINA IN SAN FRANCISCO;<br><br>and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:25-cv-9702<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT - 1 -

Plaintiffs, Chuangchuang Chen, Xipeng WANG, and Dongdong ZHU, allege on information and belief, as follows:

## BACKGROUND

1. In November 2023, San Francisco, California, hosted the Asia-Pacific Economic Cooperation ("APEC") Leaders' Week, during which Chinese President Xi Jinping arrived in the United States on November 14 to attend the summit. His visit drew large-scale public demonstrations across the city, with groups of protesters expressing opposition to the Chinese Communist Party(CCP)'s human rights abuses and authoritarian rule, while pro-CCP organizations mobilized supporters to welcome Xi's delegation. Many of these pro-CCP groups were coordinated by local Chinese associations under the influence or direction of the Chinese Consulate General in San Francisco.

2. Throughout Xi's visit, the areas surrounding the Moscone Center became focal points of confrontation between the opposing sides. Verbal altercations frequently escalated into physical clashes, resulting in a chaotic environment that challenged law enforcement efforts to maintain order. Reports indicated that dozens of violent incidents occurred during the summit period, reflecting the intensity of the hostility between pro-CCP demonstrators and anti-CCP protesters.

## PARTIES

3. Plaintiff CHUANGCHUANG CHEN ("PLAINTIFF CHEN") is an individual residing in the State of New York. He is an attorney licensed to practice law in the United States and is known for his long-standing engagement in matters relating to democracy and human rights for the Chinese people. He is the victim of the unlawful acts alleged in this Complaint.

4. Plaintiff Xipeng WANG ("PLAINTIFF WANG") is an individual residing in the State of New York. He is a human rights activist, actively engaging in matters relating to democracy

and human rights for the Chinese people. He is the victim of the unlawful acts alleged in this Complaint.

5. Plaintiff Dongdong ZHU ("PLAINTIFF ZHU") is an individual residing in the State of New York. He is a human rights activist, actively engaging in matters relating to democracy and human rights for the Chinese people. He is the victim of the unlawful acts alleged in this Complaint.

6. Defendant TOISHAN BENEVOLENT ASSOCIATION, INC. ("DEFENDANT TOISHAN ASSOCIATION"), is, upon information and belief, an incorporated association or organization operating in the San Francisco Bay Area, California. The organization consists primarily of individuals of Toishan origin and participates in social and cultural activities within the local Chinese community.

7. Defendant ZUOLIN MA ("Defendant MA"), aka Joe Ma, is an individual who, upon information and belief, resides in Oakland, California. He is or was an employee, agent, servant, supervisor, managing agent, owner, partner, joint venturer, director, and/or officer of Defendant TOISHAN ASSOCIATION, and in that capacity was acting within the course and scope of said agency, service, and employment with Defendant TOISHAN ASSOCIATION, during all times alleged herein, and acted directly under the direction of Defendant TOISHAN ASSOCIATION, and all of Defendant Ma's actions were approved and ratified by Defendant TOISHAN ASSOCIATION. Upon information and belief, PLAINTIFFS allege, at all relevant times, Defendant MA was a "managing agent" and/or "Officer" of Defendant TOISHAN ASSOCIATION.

8. Defendant ZHU (Xianzhen Zhu or Shubai Zhu, exact given name unknown) is, upon information and belief, an individual residing in Oakland, California. He is or was an employee, agent, servant, supervisor, managing agent, owner, partner, joint venturer, director, and/or officer of Defendant TOISHAN ASSOCIATION, and in that capacity was

acting within the course and scope of said agency, service, and employment with Defendant TOISHAN ASSOCIATION, during all times alleged herein, and acted directly under the direction of Defendant TOISHAN ASSOCIATION, and all of Defendant ZHU's actions were approved and ratified by Defendant TOISHAN ASSOCIATION. Upon information and belief, PLAINTIFFS allege, at all relevant times, Defendant ZHU was a "agent" and/or "employee" of Defendant TOISHAN ASSOCIATION.

9. Defendant CONSULATE GENERAL OF THE PEOPLE'S REPUBLIC OF CHINA IN SAN FRANCISCO (Defendant "CONSULATE GENERAL OF CHINA IN SAN FRANCISCO") is a foreign diplomatic mission of the People's Republic of China, located at 1450 Laguna Street, San Francisco, California 94115.

10. Doe Defendants: DOES 1 through 50, inclusive ("DOES"), are sued under fictitious names because the true names and capacities, whether individual, corporate or association, or otherwise, designated herein as DOES, are unknown to PLAINTIFFS at this time, who, therefore, sue said DOES by such fictitious names and will ask leave of Court to amend this Complaint to show their true names and capacities when ascertained. PLAINTIFFS are informed and believes and thereon alleges that DOES are/were individuals or entities that is/are in some manner responsible for the wrongs and damages alleged below in so acting as the employee, agent, servant, and/or partner of any one or more of any named Defendant herein, and/or are/were doing business at all times herein mentioned and material hereto in the State of California, and are/were the parent corporation(s), subsidiaries, affiliated entities, predecessor and/or successor corporations, assignees, insurers, alter ego, agent, managing agent, principal, owner, partner, joint venturer, representative, manager, and/or co-conspirator of one or more of any named Defendant herein, and are/were at all times mentioned herein acting within the course and scope of said agency and employment, and all

acts and omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and consent of each named Defendant herein.

11. Defendants, TOISHAN ASSOCIATION, MA, ZHU, and CONSULATE GENERAL OF CHINA IN SAN FRANCISCO, are hereinafter collectively referred to as "DEFENDANTS".

12. PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS, and each of them, and at all times herein mentioned, were duly authorized agents, servants, representatives, employers, employees, partners, joint venturers, predecessors in interest, successors in interest, and/or co-conspirators of the other, and were acting at all times within the course and scope of their agency or representative capacity with the knowledge and consent of the other, therefore supporting, encouraging, condoning, approving, authorizing, and ratifying the conduct of all other Defendants named herein.

**JURISTICTION AND VENUE**

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1330 and 28 U.S.C. §1605(a) as money damages are sought from a foreign state for personal injury occurring in the United States and caused by the tortious act or omission of that foreign state and of officials, employees, or agents of that foreign state acting within the scope of their office, employment, or agency. Besides, pursuant to 28 U.S.C. § 1331, which gives federal jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. Plaintiffs claim general jurisdiction pursuant to 18 U.S.C. § 3231, which gives federal jurisdiction over foreign sovereignty. Plaintiffs also claim diversity jurisdiction pursuant to 28 U.S.C. § 1332, which extends federal jurisdiction to cases with the amount in controversy over $75,000 involving Plaintiffs with different citizenship from all Defendants.

And the Court has jurisdiction under 28 U.S.C. § 1367, supplemental jurisdiction, as the remaining claims form part of the same case or controversy.

14. This Court has personal jurisdiction over Defendants under 28 U.S.C. § 1330(b) as a California District Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's causing tortious injury in California by an act or omission in California.

15. Venue is proper in Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)-(d), because a substantial part of the unlawful conduct occurred in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

16. The events and acts giving rise to this action occurred primarily within the City and County of San Francisco, California, including but not limited to the area surrounding the Moscone Center and the intersection of Fourth and Mission Streets, where the APEC summit and related demonstrations took place in November 2023.

17. Pursuant to Civil Local Rule 3-2(c) and (d) of the United States District Court for the Northern District of California, this case shall be assigned to the San Francisco/Oakland Division, which covers the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma.

18. Accordingly, intradistrict assignment to the San Francisco Division is proper, as the alleged conduct, injuries, and defendants' activities occurred within the territorial jurisdiction of the City and County of San Francisco.

## STATEMENT OF FACTS

19. On November 16, 2023, Plaintiffs were present in downtown San Francisco, California, near the Moscone Center, where the Asia-Pacific Economic Cooperation (APEC) summit was being held, to lawfully exercise their right to peaceful expression and protest.

20. At that time and place, Plaintiffs and their companions were surrounded by a much larger group of pro-CCP (Chinese Communist Party) supporters, whose numbers were many times greater than the group of protesters.

21. The two groups began to engage in verbal confrontation, during which pro-CCP supporters shouted aggressively and advanced toward the protesters, forcing them to retreat from the temporary safety barricades that had been erected in front of the Moscone Center.

22. Among the crowd of pro-CCP supporters were Defendant MA and Defendant ZHU, who appeared together at the scene and, along with other pro-CCP demonstrators, participated in surrounding and blocking the protesters, including plaintiffs.

23. The pro-CCP group, led and joined by Defendants MA and ZHU, physically pushed and drove the protesters away and trapped Plaintiffs and several others.

24. On or around 12:08 pm, Plaintiffs, together with several other protestors, were walking away and southbound on Fourth Street toward the vicinity of Mission Street

25. Totally unprepared, Defendant ZHU brought up a canister of pepper spray and discharged it directly into Plaintiffs' eyes at close range.

26. As a result of the chemical assault, Plaintiffs immediately experienced intense pain, burning, tearing, and temporary loss of vision. Plaintiffs subsequently suffered bodily injury, eye irritation, and ongoing physical discomfort.

27. In addition to their physical injuries, Plaintiff suffered severe emotional distress, including humiliation, anxiety, and psychological trauma stemming from being targeted and assaulted in public while exercising his constitutional rights.

28. The incident left Plaintiffs with lasting harm to his personal dignity, sense of safety, and emotional well-being, causing them to live under persistent stress and fear arising from the attack.

## FIRST CAUSE OF ACTION – ASSAULT

*(Against Defendants ZHU, MA, and TOISHAN ASSOCIATION, CONSULATE GENERAL OF CHINA IN SAN FRANCISCO; and DOES 1–50)*

29. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

30. Under California law, assault consists of: (a) an intentional act by defendant; (b) with apparent present ability to inflict harmful or offensive contact; (c) that causes plaintiffs to reasonably apprehend imminent harmful or offensive contact; (d) without consent and without legal privilege; and (e) resulting damages.

31. On November 16, 2023, near Fourth and Mission Streets in San Francisco, Defendants ZHU and MA, together with a group of pro-CCP supporters, intentionally surrounded and advanced toward Plaintiffs during a protest, trapping him near a building entrance. ZHU produced and discharged pepper spray at close range, while MA assisted in blocking Plaintiffs' movement and coordinating the crowd's approach, creating an immediate and credible threat of physical harm.

32. The conduct of ZHU and MA placed Plaintiffs in reasonable apprehension of imminent bodily injury. Plaintiffs did not consent to, nor was there any legal privilege justifying, such conduct.

33. Upon information and belief, at all relevant times, ZHU was an employee, agent, or member-marshal of TOISHAN ASSOCIATION, and MA was an officer, managing agent, or supervisor of that Association. Each acted within the course and scope of their agency

and employment in furtherance of the Association's objectives during the organized demonstration.

34. MA had the authority to direct or restrain ZHU's conduct but instead participated and supervised the assaultive acts. TOISHAN ASSOCIATION is vicariously liable under Cal. Civ. Code § 2338 and by ratification, as its managing agents authorized, knew of, or approved such conduct, or failed to discipline it after knowledge.

35. Upon information and belief, the CHINESE CONSULATE GENERAL IN SAN FRANCISCO coordinated, influenced, or encouraged the participation of TOISHAN ASSOCIATION and its members—including Defendants MA and ZHU—in pro-CCP activities surrounding the APEC summit. The Consulate exercised direction and control over local associations to promote the political objectives of the Chinese government, thereby making it jointly responsible for the acts committed within the scope of that coordination. Its liability arises under the non-commercial tort exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(5), as the assault occurred within the United States and caused personal injury to a U.S. resident.

36. The true names and capacities of DOES 1 through 50 are presently unknown. Plaintiffs are informed and believe that each DOE Defendant participated in, directed, or aided and abetted the assault, acted as an agent or employee of the other Defendants, and was within the course and scope of that agency or conspiracy. Plaintiffs will amend this complaint to allege their identities when ascertained.

37. As a direct and proximate result of the Defendants' assaultive conduct, Plaintiffs suffered physical injury, eye pain, and severe emotional distress, including humiliation, fear, and ongoing psychological trauma, all in amounts to be proven at trial.

38. The conduct of ZHU, MA, and the other Defendants was willful, malicious, and oppressive, undertaken with conscious disregard for Plaintiffs' safety and rights. Plaintiffs seek punitive

and exemplary damages against the individual Defendants and against TOISHAN ASSOCIATION and the CONSULATE GENERAL OF CHINA IN SAN FRANCISCO to the extent permitted by law, based on the authorization, ratification, or reckless indifference of their officers, directors, or managing agents.

### SECOND CAUSE OF ACTION – BATTERY

*(Against Defendants ZHU, MA, and TOISHAN ASSOCIATION, CONSULATE GENERAL OF CHINA IN SAN FRANCISCO; and DOES 1–50)*

39. Under Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

40. Under California law, battery is the intentional and unlawful touching of another person in a harmful or offensive manner without consent. A defendant is liable if: (1) the defendant intentionally did an act resulting in harmful or offensive contact with the plaintiffs' person; (2) the plaintiffs did not consent to the contact; (3) the contact caused harm or offense; and (4) the defendant's act was a substantial factor in causing that harm. (*So v. Shin, 212 Cal.App.4th 652 (2013); CACI No. 1300.*)

41. On November 16, 2023, near the Moscone Center in San Francisco, Defendant ZHU intentionally directed and discharged a canister of pepper spray at close range into Plaintiffs' face and eyes, causing immediate and harmful physical contact.

42. The pepper spray came into direct contact with Plaintiffs' eyes, skin, and respiratory system, causing intense burning, pain, tearing, and temporary loss of vision. Such contact constituted offensive and harmful physical touching.

43. Plaintiffs did not consent to any physical contact or use of force, and the actions of Defendant ZHU were neither privileged nor justified under any lawful defense.

COMPLAINT - 10 -

44. Defendant MA was present at the time of the battery, acting in concert with ZHU and others to block and confine Plaintiffs, thereby enabling ZHU's attack. MA's conduct was undertaken with full knowledge of the imminent use of force and with the purpose and intent to aid and facilitate the battery, making him jointly liable as an aider and abettor and co-tortfeasor.

45. Upon information and belief, at all relevant times ZHU was an employee, agent, or member of TOISHAN ASSOCIATION, and MA was an officer, supervisor, or managing agent of that organization. Each acted within the course and scope of their agency or employment, and their conduct furthered the Association's objectives related to organized crowd mobilization and "security" at the APEC-related demonstrations.

46. Defendant TOISHAN ASSOCIATION is vicariously liable for the battery committed by its agent and employee ZHU and by its officer and managing agent MA, under Cal. Civ. Code § 2338, as the acts occurred within the scope of their assigned roles. The Association is further liable by ratification, as its officers and managing agents knew or approved of the conduct or failed to take corrective action thereafter.

47. Upon information and belief, the CONSULATE GENERAL OF CHINA IN SAN FRANCISCO coordinated and influenced the organization and activities of TOISHAN ASSOCIATION and its members, including ZHU and MA, in furtherance of political objectives aligned with the Chinese government. The Consulate's coordination and direction made it jointly responsible for the wrongful acts carried out by its agents and proxies within the United States. The Consulate's liability arises under the non-commercial tort exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(5), as the battery occurred on U.S. soil and caused personal injury to a U.S. resident.

48. The true names and capacities of DOES 1 through 50 are presently unknown. Plaintiffs are informed and believe that each DOE Defendant aided, abetted, directed, or ratified the

commission of the battery, acted as an agent or employee of the other Defendants, and was within the course and scope of that agency or concerted action. Plaintiffs will amend this complaint to allege their true identities when ascertained.

49. As a direct and proximate result of the battery committed by the Defendants, Plaintiffs suffered severe pain, eye injury, physical discomfort, and continuing emotional distress, including fear, humiliation, and anxiety, all in amounts to be proven at trial.

50. The conduct of ZHU, MA, and the other Defendants was willful, malicious, and oppressive, and carried out with conscious disregard for Plaintiffs' rights and safety. Plaintiffs therefore seek punitive and exemplary damages against the individual Defendants and against TOISHAN ASSOCIATION and the CONSULATE GENERAL to the extent permitted by law, based on authorization, ratification, or reckless indifference by their officers or managing agents.

**THIRD CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

*(Against Defendants ZHU, MA, and TOISHAN ASSOCIATION, CONSULATE GENERAL OF CHINA IN SAN FRANCISCO; and DOES 1–50)*

51. Under Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52. Under California law, the tort of Intentional Infliction of Emotional Distress (IIED) consists of: (a) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (b) the plaintiffs' suffering of severe or extreme emotional distress; and (c) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579 (1979); CACI No. 1600.)

Case 3:25-cv-09702   Document 1   Filed 11/11/25   Page 13 of 17

53. Defendants' conduct toward Plaintiffs—including surrounding, trapping, and spraying him with pepper spray during a peaceful protest—was extreme, outrageous, and beyond all bounds tolerated in a civilized society.

54. Defendant ZHU, by intentionally deploying pepper spray into Plaintiffs' eyes at close range, acted maliciously and with intent to cause severe emotional and physical harm, or at the very least with reckless disregard of the probability of doing so.

55. Defendant MA, as a leader and supervisor within the group, acted in concert with ZHU to intimidate and attack Plaintiffs. MA's participation in surrounding and confining Plaintiffs, while failing to prevent or stop the assault, constitutes extreme and outrageous conduct intended to humiliate and terrorize Plaintiffs in public view.

56. Upon information and belief, both ZHU and MA acted as agents, employees, or officers of TOISHAN ASSOCIATION, and within the course and scope of that agency or employment. Their participation in the violent demonstration furthered the Association's objectives of organizing and directing pro-CCP supporters to confront opposing demonstrators.

57. Defendant TOISHAN ASSOCIATION is liable for the intentional infliction of emotional distress caused by its agents and officers, under principles of respondeat superior and ratification, as the conduct of ZHU and MA occurred within their assigned roles and was approved or subsequently ratified by the Association's managing agents.

58. Upon information and belief, the CONSULATE GENERAL OF CHINA IN SAN FRANCISCO coordinated and directed activities of TOISHAN ASSOCIATION and its members, including ZHU and MA, in order to suppress and intimidate anti-CCP protesters. Such conduct—encouraging, supporting, or commanding acts of aggression against peaceful demonstrators—was extreme, outrageous, and intended to instill fear and distress in U.S.-based dissidents and human rights advocates. The Consulate's liability arises under the non-commercial tort exception of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(5).

COMPLAINT - 13 -

59. The true names and capacities of DOES 1 through 50 are presently unknown. Plaintiffs are informed and believe that each DOE Defendant participated in, encouraged, directed, or ratified the conduct described herein, and acted as an agent or co-conspirator within the course and scope of such relationship. Plaintiffs will amend this complaint to identify them when their identities become known.

60. As a direct and proximate result of the conduct of the Defendants, Plaintiffs suffered severe emotional distress, including humiliation, anxiety, fear, loss of sleep, mental anguish, and psychological trauma. Plaintiffs continue to experience emotional pain and distress as a result of the attack.

61. The conduct of ZHU, MA, and the other Defendants was willful, malicious, and oppressive, carried out with an intent to harm and to silence Plaintiffs for their political expression. Plaintiffs therefore seek punitive and exemplary damages against the individual Defendants and against TOISHAN ASSOCIATION and the CONSULATE GENERAL, to the extent permitted by law, based on authorization, ratification, or reckless disregard by their officers or managing agents.

### FOURTH CAUSE OF ACTION – CIVIL CONSPIRACY

*(Against Defendants ZHU, MA, and TOISHAN ASSOCIATION, CONSULATE GENERAL OF CHINA IN SAN FRANCISCO; and DOES 1–50)*

62. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

63. Under California law, civil conspiracy is a legal doctrine that imposes liability on persons who, by agreement or understanding, conspire to commit a wrongful act. The essential elements are: (a) the formation of a conspiracy—an agreement between two or more persons to commit a wrongful act; (b) commission of wrongful acts in furtherance of that agreement;

and (c) resulting damage to the plaintiffs. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994); CACI No. 3600.)

64. On or before November 16, 2023, Defendants ZHU and MA, along with other members of the pro-CCP demonstration group, entered into an express or implied agreement to engage in coordinated, aggressive, and intimidating conduct toward anti-CCP protesters, including Plaintiffs.

65. The agreement and understanding included plans to surround, isolate, and forcibly remove protesters from public viewing areas near the Moscone Center during the APEC summit, thereby silencing opposing voices and creating a perception of unanimous support for the Chinese government.

66. Pursuant to that common plan, Defendants ZHU and MA, acting jointly and in concert, surrounded and trapped Plaintiffs and other protesters, and Defendant ZHU intentionally deployed pepper spray at close range against Plaintiffs, causing them physical and emotional injury.

67. Upon information and belief, TOISHAN ASSOCIATION facilitated, supported, or encouraged its members, including ZHU and MA, to participate in the pro-CCP mobilization and confrontations that gave rise to this attack. The Association provided organizational structure, coordination, and approval of its members' presence and actions, and therefore participated in and furthered the conspiracy.

68. Upon information and belief, the CONSULATE GENERAL OF CHINA IN SAN FRANCISCO played a central role in organizing, directing, or influencing the activities of TOISHAN ASSOCIATION and other affiliated groups to stage large-scale demonstrations in support of the Chinese government during the APEC summit. The Consulate's coordination and encouragement of these groups—including through meetings,

communications, and logistical support—contributed to the formation and execution of the conspiracy that resulted in Plaintiffs' injury.

69. Each Defendant acted with the intent to accomplish the same wrongful objective—to suppress, intimidate, and silence Plaintiffs and other anti-CCP demonstrators through the use of coordinated threats, intimidation, and violence—and each committed overt acts in furtherance of that plan.

70. The true names and capacities of DOES 1 through 50 are presently unknown. Plaintiffs are informed and believe that each DOE Defendant participated in, directed, aided, or ratified the conspiracy, and acted as an agent or co-conspirator of the other Defendants. Plaintiffs will amend this complaint to allege their true identities when ascertained.

71. As a direct and proximate result of Defendants' concerted actions and conspiracy, Plaintiffs suffered physical injuries, pain, humiliation, emotional distress, and other general and special damages in amounts to be proven at trial.

72. The conduct of ZHU, MA, and the other Defendants was willful, malicious, and oppressive, undertaken with conscious disregard for Plaintiffs' rights and with intent to injure, intimidate, and silence them for his political views. Plaintiffs therefore seek punitive and exemplary damages against all Defendants to the extent permitted by law, based on their joint participation, authorization, ratification, and reckless indifference to the harm inflicted.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment against all Defendants, jointly and severally, as follows:

73. For general damages, including but not limited to physical pain, suffering, emotional distress, humiliation, and loss of enjoyment of life, in an amount to be proven at trial;

74. For special damages, including medical expenses, therapy or counseling costs, and all other economic losses incurred or to be incurred as a result of Defendants' conduct, in an amount to be proven at trial;

75. For punitive and exemplary damages against the individual Defendants ZHU and MA, and against TOISHAN ASSOCIATION, CONSULATE GENERAL OF CHINA IN SAN FRANCISCO, and DOES 1–50 to the extent permitted by law, in order to punish and deter willful, malicious, and oppressive conduct committed in conscious disregard of Plaintiffs' rights;

76. For injunctive and equitable relief, enjoining Defendants, their agents, servants, employees, and all persons acting in concert with them, from engaging in further harassment, intimidation, or violence against Plaintiffs and other individuals exercising protected expression within the United States;

77. For costs of suit incurred herein, including Plaintiffs' attorney fees and costs, filing fees and service costs;

78. For an award of interest, including prejudgment interest;

79. For such other and further relief, including any additional equitable relief, as the Court deems proper and just under all the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues.

Dated: November 11, 2025

Respectfully submitted,

By: /s/ Chuangchuang CHEN

Chuangchuang Chen, Esq. *Attorney for Plaintiffs*

**List of Exhibits:**

A. San Francisco Police Department Incident Report

COMPLAINT                                                                 - 17 -